UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-40 (SRN/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| JAMES PATRICK LYONS, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its trial brief in the above-captioned case. Included in this memorandum is a summary of the government's anticipated evidence and summaries of the government's motions in limine and other potential evidentiary matters.

## I.   INDICTMENT AND ELEMENTS OF THE OFFENSE

The defendant is charged with five counts of interstate transmission of a threat to injure another person, in violation of 18 U.S.C. § 875(c). There are three elements of the offense: (1) the defendant knowingly sent a message in interstate or foreign commerce, and a reasonable person would view or have understood the communication as containing a true threat to injure another person; (2) the communication contained a true threat to injure; and (3) the defendant subjectively intended the communication as a threat, knew the communication would be viewed as a threat, or consciously disregarded a substantial risk that the communication could be viewed as a threat.

1

The government estimates that its case-in-chief will require approximately one to two days.

## II.   FACTUAL OVERVIEW

On January 14, 2026, multiple FBI special agents and evidence recovery personnel responded to the scene of an immigration-enforcement-involved shooting in Minneapolis to investigate and collect evidence related to the shooting. The FBI's investigative efforts, however, were quickly interrupted as a large group of protestors gathered and became violent, forcing the FBI agents to abandon their government vehicles and flee on foot for their personal safety.

Several of the protestors vandalized and totaled those government vehicles, smashing the windows, slashing the tires, and spray painting the exterior with threatening epithets, such as "Hang Racist Noem," and "only good agent is a dead one," among others. The protestors then looted the government cars, taking FBI-issued equipment and materials, including firearms, ammunition, tactical vests, FBI IDs and building access badges, and various personal and FBI documents. Some of the stolen documents included rosters of employee phone numbers, email addresses, and home addresses, including the information of five FBI Agents (hereinafter "Victim A through Victim E" or "Victim Agents"), two of whom were on scene. Videos showing the vandalization and looting and the Victims' identifying information were quickly posted online.

 

*One of the totaled government
vehicles looted by the protestors*

The defendant, a resident of California, saw one of these videos and used Victim A through Victim E's personal information to send the following nearly identical[1] threatening text messages from his cellular telephone number ending in 9435 to the Victim Agents' work cellphones on the morning of January 18, 2026:

| Time | Recipient | Communication |
|---|---|---|
| 8:59 a.m. | Victim A | "Fuck you, [Victim A's first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker. 89B-MP-4181025." |
| 8:47a.m.<br><br>8:56 a.m. | Victim B | "Fuck you, [Victim B's first name], you traitor piece of shit ice loser."<br><br>"Hey [Victim B's first name]! Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |

---

[1] Some of the messages have slight, insignificant differences such as, for example, calling one Victim a "piece of shit ice agent" and another a "piece of shit ice loser." Two of the threats, however, include an FBI case number specific to the particular agent being threatened.

| Time | Recipient | Communication |
|------|-----------|---------------|
| 9:00 a.m. | Victim C | "Fuck you, [Victim C's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.. 282A-MP-4181782" |
| 8:54 a.m. | Victim D | "Fuck you, [Victim D's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |
| 8:53 a.m. | Victim E | "Fuck you, [Victim E's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |

Victim A through Victim E received the defendant's threatening messages in addition to numerous other threatening and harassing texts and voicemails on their work phones from unknown persons causing the victims concern for their and their families' safety. Victim A, for example, had their apartment key and driver's license stolen from the ransacked vehicles and could not return to their apartment after receiving the threatening texts and calls. Victim B had an unknown person show up to their personal residence while their family was home. Victim C had strangers call their work cell phone and yell and curse at them, and threaten their family members, and could not use their work cell phone any longer because of the volume of threatening and harassing calls and texts being received on a daily basis.

Investigators identified the defendant through an emergency disclosure request to the defendant's cell phone provider, which confirmed the defendant as the subscriber to the 9435 number and that the phone was located in Murietta, California. On January 26, 2026, the FBI arrested the defendant outside his home in

Murietta on a Complaint Warrant issued by this Court. The defendant had his 9435-cell phone on his person, and it was seized as evidence. Following his arrest, the defendant agreed to speak with federal agents in a post-*Miranda* interview. The defendant admitted that he saw a video of "ICE vehicles in Minnesota" being vandalized, took note of the identifying information taken from the vehicles displayed in the video, and texted each agent the messages described above. During the interview, the defendant consented to an FBI search of his phone and provided the access code; inside, agents observed the threatening messages sent to Victim A through Victim E

## III.    EXPECTED EVIDENCE

### A. Testimony

The United States will offer the testimony of the five victim agents, who will each testify generally about their background as FBI agents, the threatening messages they received, and the concern they felt for their and their families' safety. Victim A and Victim D will testify about how they and other agents and personnel responded to the scene of the January 14 shooting, how they were forced to flee and leave their government vehicles, and what was taken from the vehicles. The government will also offer testimony from the case agent, Special Agent Christopher Sylvester, about his investigation into these charges and from FBI Special Agent Brian Diaz, who interviewed the defendant following his arrest in California and observed the threatening messages inside the defendant's phone.

### B. Expert Testimony

The government may offer the testimony of FBI Special Agent Randy Larkin of the Cellular Analysis Survey Team ("CAST") as an expert in the field of historical cell site analysis and cellular technology. Special Agent Larkin will testify that he reviewed and analyzed toll and cell tower records relating to the defendant's phone number, including records related to cell site location data. Special Agent Larkin will testify that he then conducted a historical cell site analysis of the defendant's phone records to illustrate an approximate location of the defendant's phone on January 18, 2026 at the time it sent the alleged threatening text messages to Victim A through Victim E. The government has proposed a stipulation to the Defense which would preclude the need for SA Larkin's testimony.

### C. Exhibits

The United States will offer into evidence screenshots of the threatening text messages both from the Victim Agents' phones and from the defendant's phone; pictures of the damaged government vehicles; portions of the defendant's recorded interview with Special Agent Diaz, along with transcripts for reference; the defendant's certified Verizon cell phone records; and SA Larkin's illustrated cell site analysis.

## IV.   EVIDENTIARY ISSUES

The United States has filed accompanying motions in limine, seeking Orders from the Court: (a) permitting evidence regarding contextual investigative background (Dkt. 39); (b) to exclude irrelevant evidence and impermissible

arguments (Dkt. 41); and (c) concerning general trial matters. (Dkt. 42). The United States highlights below the legal bases for the admission of certain testimony and evidence referenced above.

## A. Defendant's Statements and Accompanying Transcript

The government intends to offer in its case-in-chief portions of the defendant's recorded statements made to Special Agent Diaz on or about January 26, 2026.

The defendant's statements in this interview are not hearsay because they constitute party-opponent admissions under FRE 801(d)(2). *See e.g., United States v. Porter*, 544 F.2d 936 (8th Cir. 1976). Additionally, statements made by other parties in the interview are only offered to provide context for the defendant's admissions. *See United States v. Ralston*, 973 F.3d 896, 913 (8th Cir. 2020) ("Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.").

The government has prepared transcripts of these recorded segments to assist the jury in reviewing the defendant's statements. *See generally United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974). "In cases where the defense and prosecution disagree as to the contents of the tape, the proper procedure is for the jury to receive transcripts of both sides' versions." *United States v. Chiarizio*, 525 F.2d 289, 293 (2d Cir. 1975).

## B. Authentication of Business Records

The government intends to introduce certified business records from Verizon Wireless related to the defendant's cell phone pursuant to Fed. R. Evid. ("FRE") 803(6) and 902(11).

Under FRE 803(6), records of a regularly conducted activity are an exception to the hearsay rule when: (1) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (2) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (3) making the record was a regular practice of that activity; (4) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with FRE 902(11); and (5) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.  FRE 803(6).

"[W]here a statement is properly determined to be a business record as defined by FRE 803(6), it is not testimonial" and therefore "the Confrontation Clause simply has no application." *United States v. Feliz*, 467 F.3d 227, 231-33, 236 (2d Cir. 2006). The certification for the Verizon records, which the government has already turned over to the defendant, fulfills the requirements of FRE 902(11).

## V.    CONCLUSION

Through this trial memorandum the government has attempted to summarize its anticipated evidence and the principles of law applicable in resolving issues that the Court may face during trial.   The government respectfully requests an

opportunity to submit additional legal authority in connection with such other issues as may arise.

Dated:  <u>August 3, 2026</u>                     Respectfully submitted,

                                        DANIEL N. ROSEN
                                        UNITED STATES ATTORNEY

                                        <u>/s/ *Matthew M. Paulbeck*        </u>
                             BY:    MATTHEW PAULBECK (NY # 705086)
                                        MICHAEL BLACKBURN (NE # 26303)
                                        Assistant United States Attorneys
                                        District of Minnesota

        :

9