UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

               Plaintiff,

v.

JAMES PATRICK LYONS,

               Defendant.

File No. 26-CR-40 (SRN)

**DEFENDANT'S RESPONSE IN SUPPORT OF GOVERNMENT'S FIRST MOTION IN LIMINE AND DEFENDANT'S FIRST AND SECOND MOTIONS IN LIMINE**

## INTRODUCTION

On July 20, 2026, the Government filed its first Motion in Limine for an Order allowing the Government to elicit testimony regarding the facts and circumstances of the investigation's background and the close-in-time events that preceded the charges at hand as res gestae evidence necessary to provide proper context to the jury and as intrinsic evidence of Mr. Lyons' subjective intent. (Doc. 39). The Government, in part, seeks to elicit testimony that FBI Agents, including two of the alleged victims, responded to investigate an ICE shooting in Minneapolis on January 14, 2026. The Government also seeks to clarify that the FBI Agents and alleged victims were not themselves involved in the immigration enforcement action, and that an FBI vehicle was subsequently broken into by an angry mob of protesters who then disseminated documents taken from the vehicle and posted on the internet, including the names and cell phone numbers of the five Agents.

**DEFENDANT'S RESPONSE IN SUPPORT OF GOVERNMENT'S FIRST MOTION IN LIMINE AND DEFENDANT'S FIRST MOTION IN LIMINE**

Mr. Lyons does not object to the Government's Motion. Rather, Mr. Lyons agrees with the Government's position and requests an Order from the Court permitting him to elicit, for the same stated reasons as presented by the Government's Motion, testimony surrounding and further expanding upon the same context and surrounding circumstances of the events at issue. Specifically, Defendant seeks to elicit testimony regarding the details, circumstances, background, political climate, and closeness in time of the key events which occurred in Minnesota during the course of Operation Metro Surge. The testimony would seek to elicit the national and community reaction to those events as well as the number, nature, and content of the the messages received by the five FBI Agents and alleged victims from individuals other than Mr. Lyons from the date that the Agents' information was publicly leaked to the date that the Agents were allegedly contacted by Mr. Lyons. This anticipated testimony would include: (1) the shooting of Renee Good by an ICE Agent on January 7, 2026; (2) the shooting of Julio Cesar Sosa-Celis by an ICE Agent on January 14, 2026; and, (3), all of the messages sent to the Agents by other individuals who obtained the Agents' contact information from the leak between January 14, 2026, to January 18, 2026, when Mr. Lyons allegedly sent the text messages at issue to the Agents. The Government's Motion is incorporated herein for its reasoning and legal basis.

Operation Metro Surge was an operation by the United States Immigration and Customs Enforcement (ICE) and the Customs and Border Protection (CBP) with the stated purpose of apprehending undocumented immigrants and deporting them. It began in December of 2025, initially targeting the Twin Cities. The Department of Homeland Security (DHS) called it the largest immigration enforcement operation ever carried out.

On January 7, 2026, approximately one month into Operation Metro Surge, Renee Good, a U.S. citizen, was shot and killed by an ICE Agent. The Agent fired three shots through Good's driver-side window, killing her. The Government publicly branded the deceased Ms. Good as the attacker and simultaneously lauded the Agent. The Government also precluded Minnesota State authorities from conducting its own investigation into Good's death. The incident caused extreme outrage both locally and nationally.

On January 14, 2026, one week after the death of Ms. Good, an ICE agent shot and wounded Julio Cesar Sosa-Celis in north Minneapolis. Protesters confronted federal agents on the same night. Documents containing identifying information, including the names and phone numbers of the FBI Agents and alleged victims, were stolen from a government vehicle. The documents were posted on social media. As a result of the information leak the Agents received many harassing phone calls and text messages from individual phone numbers from January 14, 2026, to the morning of January 18, 2026, when Mr. Lyons is alleged to have contacted them.

The expanded context of Operation Metro Surge and the defining events which took place therein, the closeness in time of those events to the date of the charges at issue, and the local and national response to those events, is res gestae evidence which is essential to provide to the jury. The messages sent to Agents by individuals other than Mr. Lyons from January 14, 2026, to January 18, 2026, are also highly probative res gestae evidence. Evidence that: (1) Mr. Lyons discovered the Agents' contact information several days after it had already been posted, and (2), that the Agents had already been contacted numerous times by numerous individuals as a result of the information leak on January 14, 2026, go directly to Mr. Lyons' state of mind, whether the messages were politically rooted, and whether any message sent by Mr. Lyons amounted to an actual threat.

**DEFENDANT'S SECOND MOTION IN LIMINE: TO PRECLUDE TESTIMONY BY ALLEGED VICTIMS AS TO THEIR PERSONAL REACTIONS TO OR INTERPRETATIONS OF THE MESSAGES AT ISSUE**

Mr. Lyons is charged with five counts of Interstate Transmission of Threats to Injure the Person of Another. Each Count involves a separate alleged victim. At trial, the Government must prove that Mr. Lyons: (1) knowingly sent the communication charged in the indictment, and that a *reasonable person* would view or have understood the communication as containing a true threat to injure another person; (2) that the communication was sent in interstate commerce; and (3), that Mr. Lyons sent the message for the purpose of issuing a true threat, or with knowledge that the message would be viewed as a true threat, or that consciously disregarding a substantial risk that his communication could be viewed as a true threat.

Mr. Lyons respectfully asks the Court for an Order precluding the Government from eliciting testimony regarding the recipient Agents' personal evaluation of, opinion on, emotional response to, and any other details regarding their own reaction to receiving the text messages allegedly sent to them by Mr. Lyons, or by anyone else, between January 14, 2026, and January 18, 2026. Any such testimony should be precluded as: (1) victim reaction testimony is irrelevant under FRE 401 and 402; (2) because such testimony is inadmissible under FRE 701; and (3), because such testimony should be excluded under FRE 403.

I.    Victim Reaction Testimony is Irrelevant Under FRE 401-402 Because the Governing Standard is Objective and Sender-Focused.

FRE 401 states that Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Under the facts of this case, the testimony of an alleged victim's reaction to the alleged threat(s) fails both prongs of Rule 401, and would therefore be irrelevant to this case. Rule 402 plainly states that irrelevant evidence is inadmissible.

4

The Eighth Circuit's true threat standard requires both an objective assessment of whether a reasonable recipient would interpret the communication at issue as a threat and a subjective finding regarding the defendant's mental state. *United States v. Dierks*, 978 F.3d 585 (8th Cir. 2020). The question is what a reasonable recipient would have interpreted the communication to mean—not what the actual recipient felt. The District of Minnesota addressed this issue in *United States v. Bellrichard*, 779 F. Supp. 454 (D. Minn. 1991), "the issue here is not the actual, subjective response of the recipients of the communications." The court in *Bellrichard* applied the standard that "if a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury." *Id.*

## II.    Victim Interpretation Testimony Is Inadmissible Under FRE 701

FRE  701 permits lay opinion testimony only if it is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge *United States v. Dozier*, 31 F.4th 624 (8th Cir. 2022).  The alleged victims here are in no better position than the jury to interpret the plain meaning of the communications allegedly sent by Mr. Lyons. Their opinion about what the messages meant, or whether they constituted threats, could not help the jury determine any fact in issue.

### III.    Victim Interpretation Testimony Should be Excluded Under FRE 403

Allowing the Government to elicit interpretation testimony from the alleged victims should be precluded as any such testimony would serve no legitimate purpose, would run a substantial risk of confusing the issues, and the probative value of such testimony, if any, would be substantially outweighed by the risk of prejudice to Mr. Lyons. True threats are serious

5

expressions that convey to a reasonable person that the speaker means to commit an act of harm or unlawful violence to a particular individual or group of individuals. The jury will therefore be charged with evaluating and determining Mr. Lyons' guilt or innocence based on his mental state, their own evaluation of the content of the messages, and what a 'reasonable person' would interpret those messages to be. They will base their decision on the 'reasonable person' standard, not on the interpretation or reaction of the actual recipient.

For the foregoing reasons, Mr. Lyons requests that the Government be precluded from eliciting the personal interpretations and/or reactions of the Agents and alleged victims regarding the message(s) that they allegedly received from Mr. Lyons, as well as any other person who contacted them after their information was disclosed online.

Respectfully submitted,

Dated: <u>August 3, 2026.</u>

**WOLD LAW**

/s/ Peter B. Wold
Peter B. Wold, Atty. #118382
331 Second Ave. S., Ste. 705
Minneapolis, MN 55401
612-341-2525

6