UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-40 (SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S RESPONSE TO |
| v. | ) | DEFENDANT'S MOTIONS IN LIMINE |
| | ) | |
| JAMES PATRICK LYONS, | ) | |
| | ) | |
| Defendant. | ) | |

The government respectfully submits its response in opposition to the defendant's motions in limine (ECF 47) to: (1) permit testimony "expanding upon . . . context and surrounding circumstances" taking place in January 2026; and (2) preclude the government from eliciting testimony of the Victim Agents' reactions to, and interpretations of, the alleged threatening messages the defendant sent. As explained in more detail below, the defendant's motions should be denied.

**I.    The Court Should Decline the Defense's Request to Introduce Irrelevant, Prejudicial, and Confusing Collateral Matters at Trial.**

The parties agree that some context and surrounding circumstances are relevant and admissible at trial. Indeed, such evidence is admissible (1) as contextual background to avoid jury confusion, *see* ECF 39; (2) as related to the defendant's subjective state of mind in sending his alleged threats; and (3) as evidence of how a

1

reasonable person would objectively understand and perceive those alleged threats.[1] For instance, the government intends to introduce during its case-in-chief evidence of the following:

- that the Victim Agents were aware of (and two witnessed) the chaotic and violent events pertaining to the night of January 14, 2026, including the immigration-enforcement-related shooting of Mr. Sosa-Celis in Minneapolis, and the resultant ransacking and vandalizing by protestors of two FBI vehicles that led to FBI firearms, ammunition, radios, and personnel rosters (including the victims' names and contact information) being stolen, and the information being widely broadcast on social media;

- that during January 2026, local and federal law enforcement officers were often involved in hostile or violent interactions with angry protestors in Minneapolis, were the subject of threats, and were followed home from their work offices; and

- that the defendant was aware of the events surrounding the destruction of the two FBI vehicles on January 14, 2026, was generally aware of

---

[1] While the government initially sought to restrict *res gestae* context solely to the events from January 14 and 18, *see* ECF 41 at 1, after reading the defense's response to the government's motion, *see* ECF 49, the government acknowledges that *some* further context regarding the events of January 2026 would be appropriate, provided they are relevant to the narrow issue of the defendant's subjective state of mind and how a reasonable person would objectively understand and perceive the defendant's alleged threats. The government still contends, however, that the defense's arguments in its motion to dismiss, *see* ECF 30, are wholly impermissible arguments for justification and/or nullification and should be precluded.

violent exchanges between law enforcement officers and protestors in Minneapolis during January 2026, and had been following those issues in the news.

This relevant evidence will be offered to establish the context and totality of the circumstances in which the victims received and evaluated the threatening messages sent by the defendant, *see United States v. Dierks*, 978 F.3d 585, 589 (8th Cir. 2020) (true threat determination involves how "a reasonable person would view or have understood the communication as containing a true threat to injure another person," which includes "the context of the totality of the circumstances in which the threat was made"), and as evidence of the defendant's subjective state of mind in sending his alleged threats, *see Counterman v. Colorado*, 600 U.S. 66, 69 (2023) (to show defendant's subjective state of mind, government need only show defendant consciously disregarded a substantial risk that his communications would be viewed as a threat).

The Court, however, should not permit the defense to elicit irrelevant testimony or proffer arguments intended to inflame the jury's passion or suggest justification and/or jury nullification, because it will result in unfair prejudice, confuse the issues, or mislead the jury. FRE 403.

### A. Cumulative, Impermissible, and Gratuitous Contextual Evidence Should be Precluded.

While the government does not object to the defense offering contextual evidence for the limited purpose of showing the defendant's state of mind when he sent the alleged threating texts to the Victim Agents on January 18, 2026, such

evidence should be excluded when it is cumulative, is offered for an impermissible purpose, or is explored in gratuitous detail or in a manner likely to inflame the passions of the jury.

Evidence that is probative to the defendant's state of mind may become unfairly prejudicial when it becomes cumulative. *See United States v. Drew*, 9 F.4th 718, 724 (8th Cir. 2021) (questioning whether introduction of defendant's multiple, cumulative prior convictions "turn[ed] an initially permissible purpose . . . into an impermissible one"). Cumulative evidence of collateral matters also risks creating distracting and confusing "mini trials" or "trials within a trial." *See, e.g.*, *United States v. Thibeaux*, 784 F.3d 1221, 1226 (8th Cir. 2015) (affirming preclusion of evidence of prior incident as cumulative and likely to "result[] in a mini-trial regarding a collateral matter"); *United States v. Alston*, 626 F.3d 397, 403 (8th Cir. 2010) (affirming preclusion of defense cross-examination to avoid mini-trial on peripheral or irrelevant matters). Here, given the controversial and emotional nature of the context the defense wishes to introduce, there is a substantial risk that cumulative and repetitive focus on these peripheral background issues may "turn[] an initially permissible purpose . . . into an impermissible one," *Drew*, 9 F.4th 718 at 724, and thereby transform the trial—whether intentionally or accidentally—into a referendum on national immigration policy. The government therefore respectfully requests that the Court reasonably limit the introduction and scope of this evidence to keep it tailored to its permissible purpose: the defendant's subjective state of mind

4

and how a reasonable person would objectively understand and perceive the defendant's alleged threats.

Similarly, evidence that is admissible for one purpose may be inadmissible when offered for another. *See, e.g., United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (evidence of racially inflammatory items recovered from defendant's home relevant in bomb threat case for narrow purpose of showing motive, intent, and state of mind). Indeed, courts routinely admit evidence for one purpose but limit how a party may use or argue that evidence to the jury. *E.g.*, Fed R. Evid. 404(b); *United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) ("Whether Rule 404(b) prohibits the admission of particular piece of evidence depends, therefore, on the purpose for which it is offered."). The Court should prohibit the defense from transforming permissible contextual evidence about January 2026—offered as res gestae to show the defendant's subjective state of mind and a reasonable person's objective interpretation of an alleged threat—into impermissible arguments attempting to inflame the passions of the jury or suggest justification and/or jury nullification.

For example, evidence that the defendant was aware of ICE actions in Minnesota and that it generated strong public backlash should not be transformed into the general argument that "the country as a whole, viewed [ICE actions] to be the egregious, illegal, unconscionable, and indefensible actions by the Federal government." ECF 30 at 8. The former properly relates to the defendant's subjective state of mind, while the latter is an improper and irrelevant argument about the

5

legitimacy of federal immigration policy. Similarly, evidence that the defendant knew about large scale protests to argue that the defendant's messages should be viewed as political speech should not also be used to inflame the jury or suggest justification or nullification through references to "the people of Minneapolis [being] nominated for the Nobel Peace Prize for their . . . response to the injustice occurring in their community." *Id.* Such a reference is, again, irrelevant to the issue at trial.

Finally, the government respectfully moves the Court to preclude the defendant from needlessly exploring controversial topics in gratuitous and unfairly prejudicial detail. *E.g.*, *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir. 1987) (excessive exploration of prior conviction may become "so prejudicial as to amount to plain error" even when conviction was otherwise admissible under Fed. R. Evid. 609(a)). Evidence of the defendant's purported frustrations and disagreement with ICE actions in Minnesota need not be introduced through inflammatory details about specific, irrelevant ICE actions that would only serve to inflame the jury, confuse the issues, and unfairly prejudice the government. FRE 403. Far from the general facts that a particular shooting or arrest took place in January 2026, unnecessarily detailed defense arguments that an ICE "agent fired three shots through Good's driver-side window, killing her," (ECF 47 at 3), and the government then "publicly branded the deceased Ms. Good as the attacker," (*id.*), are irrelevant, unfairly prejudicial, do little to aid the jury's understanding of the defendant's subjective state

of mind, and would only serve to improperly inflame the jury and suggest justification and/or nullification.[2]

At bottom, *res gestae* evidence is not limitless. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (*res gestae* background circumstances exception "contains inherent limitations" and "is not an open ended basis to admit any and all other act evidence the proponent wishes to introduce"). Accordingly, the Court should place reasonable guideposts on the defendant's introduction of controversial, politically charged topics which will engender unfair prejudice and confuse the jury.

### B. Cross-examination or direct evidence concerning unrelated federal investigations should be precluded.

The Court should also preclude the defense from questioning government witnesses about the irrelevant details of unrelated investigations, including investigatory steps taken or not taken by federal agents, which agents are staffing an investigation, and how an investigation has been managed generally, including such claims that the "the government precluded Minnesota State authorities from conducting its own investigation into Good's death." ECF 47 at 3. The defense has not proffered—and, indeed, cannot provide—anything to show how these investigations reasonably bear on any of the government witnesses' credibility or on any material issue. Cross-examination concerning collateral investigations is irrelevant, an impermissible attempt to generally impeach the government, and would confuse the jury and create unfair prejudice to the government.

---

[2] Notably, the January 14 shooting and its aftermath, which resulted in the destruction of FBI vehicles and the posting of agents' information online, did not involve the killing of Ms. Good, which took place a week earlier.

A party may cross-examine a witness on "specific instances of a witness's conduct" if such conduct is "probative of the character for truthfulness or untruthfulness of the witness." Fed. R. Evid 608(b)(1). Cross-examination, however, is not boundless, and "trial judges retain wide latitude. . . to impose reasonable limits" on cross-examination to prevent "harassment, prejudice, confusion of the issues" or witness safety. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also, United States v. Casoni*, 950 F.2d 893, 919 (3d Cir. 1991) (Rule 403 gives trial court broad discretion "to exclude collateral matters that are likely to confuse the issues" including cross-examination "about an unrelated criminal investigation"). Moreover, questioning federal law enforcement officers about other investigations they have worked on, which have no bearing on their credibility, is particularly inappropriate. *See, e.g., United States v. Johnson*, 968 F.2d 765, 767 (8th Cir. 1992) (affirming prohibition on questioning witness about collateral internal police investigation but recognizing that such evidence may be relevant when it bears "heavily on the credibility of a testifying police officer"). Similarly, cross-examination into politically charged collateral issues poses an acute risk of confusing the issues or creating a mini-trial. *See United States v. Crump*, 934 F.2d 947, 952 (8th Cir. 1991) (affirming prohibition of cross-examination into collateral matter "given [that] the politically charged nature of [the] case may well have confused the issues at trial"); *United States v. Alston*, 626 F.3d 397, 403 (8th Cir. 2010) (affirming preclusion of defense cross-examination to avoid mini-trial on peripheral or irrelevant matters).

In *Crump*, the defense sought to ask a former member of the Missouri House of Representatives, who procured cocaine from the defendant, to identify the names of other people to whom the defendant allegedly sold drugs. 934 F.2d at 950. The Eighth Circuit affirmed the trial court's prohibition of this line of questioning, reasoning that the cross-examination concerned a matter that was collateral "to the investigation which led to [the defendant's] indictment" and "given the politically charged nature of [the] case [it] may well have confused the issues at trial." *Id*. at 952. Like *Crump*, cross-examination about the investigation into Ms. Good's death, the inner workings of that investigation, and whether Minnesota State authorities were purportedly precluded from investigating it, is wholly irrelevant to the investigation which led to Mr. Lyons' indictment, has no bearing on witness credibility, and, given the politically charged nature of those investigations, will likely confuse the issues at trial and unfairly prejudice the government. *Id*.; FRE 403.

In short, Fed. R. Evid 608 permits cross-examination on specific instances of conduct probative of a *witness's* character for truthfulness. The Court should not permit the defense to question government witnesses on irrelevant investigations in an attempt to attack and impeach the government generally. Moreover, even if these collateral matters were somewhat relevant to the defendant's state of mind, any probative value of such evidence is minimal given the attenuated connection between the specific details of a particular investigation and the defendant's state of mind when sending his alleged threats. Furthermore, any probative value from such

9

questioning is substantially outweighed by the real danger of unfair prejudice and confusing the issues. Fed. R. Evid 403.

For all the foregoing reasons, the Court should preclude the defendant from introducing irrelevant, prejudicial, and confusing collateral matters at trial.

## II.   Victim Reactions to, and Interpretations of, Alleged Threats are Relevant and Admissible.

At the same time the defense asks to broaden the national and political context surrounding this case, he also seeks to narrow the government's direct proof of the Victim Agents' reactions to these alleged threats. As discussed below, this request has no basis in the law and should be denied.

As properly noted in the adopted Report and Recommendation denying the defendant's motion to dismiss the Indictment, "the reaction of those who hear the alleged threat" is among a "nonexhaustive list of factors relevant to how a reasonable recipient would view the purported threat." *See* ECF 33 (quoting in part *Doe v. Pulaski Cnty. Special Sch. Dist.,* 306 F.3d 616, 624 (8th Cir. 2002)). Indeed, the relevance of victim reactions to interstate threats is well established. *See Watts v. United States*, 374 U.S. 705, 708 (1969) (taking into account "the reaction of the listeners" in evaluating whether statement amounted to a true threat); *United States v. Ivers*, 967 F.3d 709, 719 (8th Cir. 2020) (reasoning in threats case that "it is important to note the effect of [the defendant's] statements and letters on those who heard or read them"); *United States v. J.H.H.,* 22 F.3d 821, 827 (8th Cir. 1994) (testimony of victims about feeling threatened, afraid, and fearful after threats is admissible despite defendant's claim that subjective reactions of victims was

10

irrelevant). *See also United States v. Nishnianidze*, 342 F.3d 6, 16 (1st Cir. 2003) (jury may consider "the effect of the statement on the recipient" in determining "whether a reasonable person would understand the statement to be threatening").

In *Ivers*, the defendant repeatedly threatened a federal judge through letters and multiple statements. 967 F.3d at 712-14. At trial, government witnesses testified about their reactions to the defendant's statements and their interpretations as to what the defendant's threats suggested. *Id.* at 719. In affirming the sufficiency of the jury's verdict against the defendant, the Eighth Circuit explicitly held "it is important to note the effect of [the defendant's] statements and letter on those who heard or read them" and cited examples of witnesses testifying that they found [the defendant's] statements "threatening and frightening" and "interpreted" the statements as a death threat. *Id.*

Similarly, in *J.H.H.*, a group of people set fire to a cross in the yard of an African-American family. 22 F.3d at 823. At trial, the family testified to feeling threatened and afraid by the sight of the burning cross. *Id.* at 827. The defendants argued on appeal "that the subjective reactions" of the victims was "irrelevant to the question of whether" the defendants threatened the victims. *Id.* Like *Ivers*, the Eighth Circuit rejected that argument and held that "the reaction of the victim of a threat is admissible as proof that the threat was made." *Id.* (citing *Watts,* 374 U.S. at 705).

The government intends to properly elicit testimony from the Victim Agents about their reactions to the defendant's alleged threats and their interpretation of those alleged threats. This testimony is wholly relevant to the jury's consideration of

11

how a reasonable recipient would view the purported threat—an element of the offense the government must prove. *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.875C (2025).

The defendant cites two cases in support of his motion to preclude this relevant evidence: *United States v. Dozier*, 31 F.4th 624 (8th Cir. 2022), and *United States v. Bellrichard*, 779 F. Supp. 454 (D. Minn 1991). *Dozier* discusses the testimony of a witness interpreting video surveillance depicting events for which the witness was not present. 31 F.4th at 629. In *Bellrichard*—a district court decision concerning "third party threats" that does address the admissibility of victim reactions—the defendant relies on a footnote addressing the defendant's apparent conflict in arguing that victim responses *are* relevant.[3] 779 F. Supp. at 460, n.5. In any event, the Eighth Circuit countenanced proof of listener reactions on Bellrichard's appeal. *See United States v. Bellrichard*, 994 F.2d 1318, 1321-22 (8th Cir. 1993) ("Although the government agreed to save time at trial by not presenting evidence of the recipients' reactions . . . we suspected that . . . the recipients did not laugh when they read Bellrichard's messages"). In short, neither *Dozier* nor *Bellrichard* avail the defendant, and both cases are factually distinguishable and inapposite from the facts and circumstances of the present case.

---

[3] The entire footnote reads: "The issue here is not the actual, subjective response of the recipients of the communications. The government notes that defendant argued before trial that the recipients' responses should be excluded, *but that he seems now to be arguing that the response of Ms. Hoeper is relevant.* This apparent conflict in defendant's positions is immaterial in light of the applicable objective standard for what is a threat within the meaning of the statute." 779 F. Supp. at 460 n.5. (emphasis added)

## III.    Conclusion

For all the foregoing reasons, the defense motions in limine to permit testimony concerning the broader political and national climate and to preclude testimony of the Victim Agents' reactions and interpretations of the defendant's alleged threatening messages, should be denied.


Dated: <u>August 10, 2026</u>                  Respectfully submitted,

DANIEL N. ROSEN
UNITED STATES ATTORNEY

*/s/ Matthew M. Paulbeck*

BY:   MATTHEW PAULBECK (NY # 705086)
MICHAEL E. BLACKBURN (NE # 26303)
Assistant United States Attorneys
District of Minnesota